WILLIAM T. BUIE AND WIFE, MARTHA BUIE; BENNIE ROGERS AND WIFE, JACQUELINE ROGERS; RICHARD L. HALL, JR., AND WIFE, LOIS HALL; C. KENNETH WOOD AND WIFE, SYLVIA M. WOOD; RALPH HULLENDER AND WIFE, GERALDINE HULLENDER; JOE MONTGOMERY AND WIFE, COR-NELIA MONTGOMERY; BESS S. WAMPLER; AND MICHAEL H. COR-NETTE AND WIFE, LINDA D. CORNETTE v. RICHARD C. JOHNSTON

No. 463PA84

(Filed 4 June 1985)

**Rules of Civil Procedure § 60; Deeds § 20.7 — restrictive covenant in subdivision — permanent injunction against violation — motion for relief**

The Court of Appeals erred by directing the trial judge to enter an order relieving defendant of a final judgment where defendant had begun a second

residence on his property in violation of restrictive covenants, plaintiffs had obtained a permanent injunction against the construction of a second residence, the trial judge had ordered defendant to remove the incomplete structure after the Court of Appeals had reversed his earlier refusal to do so, plaintiffs moved for a show cause order after defendant failed to comply with the removal order, and defendant sought relief from the order under G.S. 1A-1, Rule 60(b)(5) and (6) on the grounds that he planned to convert the existing incomplete structure into a garage, a lawful use under the restrictions. Directing entry of the order erroneously removed all discretion from the trial judge.

ON plaintiffs' petition for discretionary review, allowed 2 October 1984, of a Court of Appeals decision (*Becton, J.,* with *Webb* and *Eagles, JJ.,* concurring) reported in 69 N.C. App. 463, 317 S.E. 2d 91 (1984). The opinion reversed and remanded a judgment of *Washington, J.,* entered 14 January 1983 in Superior Court, GUILFORD County.

The current petition arises out of an order wherein the Court of Appeals reversed Judge Washington's order and directed him to enter an order relieving defendant of a final judgment that had been entered in this case. Defendant had sought relief under G.S. 1A-1, Rule 60(b)(5) and (6). For reasons stated we must reverse the Court of Appeals and remand for proceedings in accordance with this opinion.

*Boyan, Nix and Boyan, by Clarence C. Boyan and Robert S. Boyan, for plaintiff-appellants.*

*Robert R. Schoch, for defendant-appellee.*

VAUGHN, Justice.

The questions presented come to us as follows. Defendant's property is subject to restrictive covenants which, among other things, prohibit more than one dwelling. Defendant knowingly began construction of a second dwelling in violation of the covenants. On 17 August 1979 plaintiffs started their action to enjoin that conduct. Defendant, with counsel, stipulated there would be no further construction while the case was pending. Exhibits and affidavits were offered by plaintiffs including pictures showing the foundation and plans for the additional building.

By order entered 25 July 1980, Judge Washington permanently enjoined defendant from constructing the second resi-

dence. The judge, however, specifically declined to grant an order requiring defendant to remove the existing incomplete structure. On appeal by plaintiffs the Court of Appeals agreed with plaintiffs and held that Judge Washington erred when he did not require defendant to remove the new construction. *Buie v. Johnston*, 53 N.C. App. 97, 280 S.E. 2d 1 (1981).

In that case the Court of Appeals said "the defendant acquired his [land] with notice of the restrictive covenants. He was reminded of the particular restriction at issue when he first undertook construction of two residences . . . . [I]t is of no avail to the defendant that construction of the second residence is incomplete. The restrictive covenants are intended to preserve the value and character of the subdivision; and a useless, incomplete residential structure would be at least as detrimental to property values and the character of the neighborhood as a completed one. . . . [T]he trial court erred in denying plaintiffs a mandatory injunction requiring the defendant to remove the existing incomplete construction of the second residence. The cause is remanded for further proceedings in accordance with this opinion." 53 N.C. App. at 100-101, 280 S.E. 2d at 3.

Pursuant to this first opinion of the Court of Appeals, Judge Wood, on 17 November 1981, entered an order directing defendant to remove the incomplete structure no later than 17 December 1981. Defendant failed to do so and upon motion of plaintiffs, a show cause order for contempt was issued on 23 December 1981. Defendant responded to plaintiffs' motion and the order requiring him to show cause by filing a motion in which he contended that he was not in contempt because he had abandoned all plans to build a second residence on the property and, instead, planned to convert the existing new structure into a garage, a lawful use of the property under the restrictions. He contended that if he is required to remove the structure he would lose $8,000 that he had spent on it plus about $3,000 representing the cost of removal. He contended this loss could be avoided by incorporating the existing structure into the new garage. He sought relief from Judge Wood's order under Rule 60 of the Rules of Civil Procedure.

The motions came on for hearing before Judge Washington on 14 January 1983. Plaintiffs were allowed to withdraw their

request that defendant be held in contempt. The judge denied defendant relief under Rule 60(b). On appeal to the Court of Appeals, that decision was reversed and the case was remanded for entry of an order allowing the motion.

We first must note that the Court of Appeals was correct on the first appeal when it directed the entry of an order requiring removal of the incomplete structure. Under the facts then presented it properly relied on *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388 (1954), and ordered the removal of the offensive structure. A mandatory injunction is an appropriate remedy to compel the removal or modification of a building erected in violation of restrictive covenants. Nothing else appearing, a subsequent order punishing defendant for his willful violation of the order would have been appropriate. *City of Brevard v. Ritter*, 285 N.C. 576, 206 S.E. 2d 151 (1974).

The case had taken a different complexion, however, when defendant's motion came on for hearing before Judge Washington on 14 January 1983. Proceedings in contempt were no longer pending. Defendant's contumacious resistance to authority had, on the surface at least, been replaced with supplications to plaintiffs and to the court. Defendant, instead of ignoring the restrictive covenants and the order, sought equitable relief. For the first time he offered evidence calculated to show his intention to comply with the covenants. He offered evidence tending to show that he could incorporate the offensive construction into a structure that would be in compliance with the restrictive covenants. He asked the court to use its equitable powers to modify the decree so as to allow him to use the nonconforming construction instead of removing it as originally ordered.

On motion and upon such terms as are just, a court may relieve a party from a judgment if, among other reasons, it is no longer equitable that the judgment have prospective application. G.S. 1A-1, Rule 60(b)(5). It is fundamental, however, that "[a] motion under Rule 60(b) is addressed to the sound discretion of the trial court and the court's ruling will not be disturbed without a showing that the court abused its discretion." *Harris v. Harris*, 307 N.C. 684, 687, 300 S.E. 2d 369, 372 (1983). It was error, therefore, for the Court of Appeals to direct entry of the order now before us. When it did so it erroneously removed all discretion from the trial judge where it properly lies.

There may be instances, however, where a trial judge may fail to exercise his discretion to grant or withhold relief under a mistaken understanding of a question of law. We believe that is what occurred in the present case. It appears to us that the judge was of the view that the exercise of his discretion was limited by what he saw as requirements imposed by a 1932 decision of the United States Supreme Court. This was an error of law and not an exercise of discretion. The order recites: "The opinion in *U.S. v. Swift and Company* . . . imposes certain *requirements* on this Court before this Court *can* modify, alter or vacate the order of Judge Wood and that the defendant has failed to produce competent evidence that justice *requires* it." *Citing* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932) [Emphasis added].

In the first place the decision in *Swift* does not bind state courts and we are not required to either follow it or distinguish it from the case before us. Moreover, because of the important factual differences that prompted the language of the Supreme Court in *Swift*, we doubt that any court, state or federal, would feel constrained to reach the same result in the case before us. In 1920 the federal government started a proceeding under the Sherman Antitrust Act against Swift, Armour and three other leading meat packers to dissolve a monopoly it alleged had succeeded in unlawfully suppressing competition in the purchase of livestock, the sale of dressed meat and the distribution of a large part of the food supply of the nation. A consent decree was entered wherein, among other things, defendants were enjoined from maintaining the monopoly. On review of an order of modification the Supreme Court pointed out that, almost from the day the decree was entered, defendants and their allies had attempted to invalidate the decree and thwart its purposes. The Court further pointed out that defendants were still in a position, even if acting separately, to starve out weaker rivals. "The opportunity will be theirs [if the consent decree is lifted] to renew the war of extermination that they waged in years gone by." *Swift*, 286 U.S. at 118, 52 S.Ct. at 464, 76 L.Ed. at 1007. The Court further cited the difficulty of ferreting out the evils and repressing them when discovered as another reason for leaving the parties where it found them.

No such reasons mandate a similar response in the case before us. It seems to be clear that, if the construction started by

defendant is destroyed, defendant could then build the proposed garage without offending either the restrictive covenants or the decree. The evidence would also seem to permit the Court to find that defendant's original wrong can be corrected without requiring the destruction of the existing construction. The evidence indicates that this construction can be incorporated into the proposed garage.

We are well aware of plaintiffs' concern that, considering defendant's past attitude, his proposal is but a ruse and that, given the very large size and other features of the proposed garage, it can easily be adapted for residential purposes. They have a natural concern that after years of expensive litigation they may, once again, be forced into litigation if they are to protect those rights which have been theirs all along. It suffices to say that the judge may impose or incorporate in the decree any reasonable precautions he deems appropriate. We feel sure that the court, if it grants defendant any relief from the judgment, can fashion an equitable remedy that will protect plaintiffs. That protection must lie at the heart of any relief granted defendant under Rule 60(b) "upon such terms as are just." *Id.*

The opinion of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for remand to the Superior Court of Guilford County for proceedings in accordance with this opinion.

Reversed and remanded.